IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Criminal Action No. 15-cr-00030-MSK

**UNITED STATES OF AMERICA,**

  **Plaintiff,**

v.

1.  **DAVID SCOTT,**

  **Defendant.**

___

**OPINION AND ORDER DENYING MOTION *IN LIMINE* AND GRANTING MOTION
TO QUASH SUBPOENA**
___

  **THIS MATTER** comes before the Court pursuant to Mr. Scott's Motion *In Limine* Concerning Police Investigation (**# 54,** as supplemented **# 60**), the Government's response (**#70**), and Mr. Scott's reply (**# 71**); and the Colorado Bureau of Investigation's ("CBI") Motion to Quash Subpoenas (**# 68**).[1]

  Mr. Scott is charged in a one-count Indictment of January 27, 2015 (**# 1**) with possessing a firearm in violation of 18 U.S.C. § 922(g). As described in the Government's response, the pertinent events occurred on January 1, 2013.

  On that date, Mr. Scott, Mr. Zakeal Dixon and another individual were passengers in a vehicle that was involved in an accident. When police arrived at the scene of the accident, Mr. Scott, Mr. Dixon, and the third passenger were sitting outside the car. (They informed police

---

[1]  The Motion to Quash Subpoenas was filed *ex parte*, in part because it requested *in camera* review of the subpoenaed documents attached to the motion. The Certificate of Service for that motion indicates that the Colorado Bureau of Investigation served a copy of the motion on Mr. Scott. In any event, the Court is sufficiently advised of the issues in the motion such that it does not require a response from Mr. Scott.

1

that the driver had fled.) Police officers searched the vehicle and located, among other things, a pistol in the back seat area. The pistol was wrapped in a red bandana, which the police officers believed was indicia of a connection between the weapon and the Bloods street gang. The police officers inquired as to ownership and possession of the firearm. Both Mr. Scott and Mr. Dixon denied ownership and possession. Mr. Dixon gave a false name to the police and denied any involvement with the Bloods. Mr. Scott acknowledged that he had a prior felony conviction (and possibly gave information about his gang affiliation, although the record is unclear on this point). The police arrested Mr. Scott for possession of the pistol, but released Mr. Dixon.

Mr. Scott's motion stems from the fact that he has since discovered that Mr. Dixon's statements to the police were false According to Mr. Scott, Mr. Dixon is and was a member of the Bloods and that "Aurora Police have documented that fact in other cases." Mr. Scott notes that the police assumed the weapon belonged to Mr. Scott because of his ties to the Bloods, and he argues that "[h]ad [police] investigated further and not simply relied upon Mr. Dixon's self-authentication as not being gang-affiliated, the police would have had an alternate suspect in Mr. Dixon." In a supplement to his motion, Mr. Scott also notes that although Mr. Dixon initially told police that "he did not carry guns," Mr. Dixon was arrested four months after the incident (and subsequently convicted) for a crime involving use of a gun.

Mr. Scott seeks an *in limine* ruling that he may present Mr. Dixon's false statements to the police – that he was not a gang member and that he did not possess guns – at trial.[2] Mr. Scott cites to *Kleys v. Whitely*, 514 U.S. 419, 446-47 (1995), apparently for the proposition that a

---

[2] Mr. Scott's motion acknowledges that Mr. Dixon is not likely to appear as a witness, but does not explain the alternative mechanism by which Mr. Scott intends to elicit this (and other) evidence relating to Mr. Dixon's statements and his subsequent criminal activities– *e.g.* through the police officer who took Mr. Dixon's statements, through a police report that records the statements, through court records relating to Mr. Dixon's subsequent conviction, etc.

defendant can cross-examine police officers to impeach the sufficiency of the police's investigation.

In response to Mr. Scott's motion, the Government argues that Mr. Dixon's statements should be excluded because: (i) they are hearsay; (ii) they are testimonial in nature, requiring that the Government be permitted to cross-examine Mr. Dixon pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004); (iii) that under Fed. R. Evid. 608, Mr. Scott may not "call[ ] Mr. Dixon for the purposes of inpeach[ing his] truthfulness or untruthfulness"; and (iv) the evidence of Mr. Dixon's "friendliness to gang members or possessing a firearm four months later" is not relevant. The Government's response notes, however, that Mr. Scott "may be able to raise his points through an effective cross examination of how the officers did the investigation."

The Court finds little in the motion and response that permit an *in limine* determination. Beyond Mr. Dixon's own statements, Mr. Scott does not meaningfully identify the particular evidence he intends to offer nor does he describe the form that evidence would take (*e.g.* testimony by the police officers involved in the initial incident; records from the Aurora Police; judgments of conviction for Mr. Dixon). It appears to be undisputed that Mr. Scott may challenge the sufficiency of the initial police investigation into the ownership of the pistol. And it is clear that an appropriate witness could testify about Mr. Dixon's actual statements without running afoul of the hearsay rule because Mr. Scott would not be offering Mr. Dixon's statements ("I am not a gang member" and "I do not use guns") for their truth. Indeed, the sole purpose of Mr. Scott offering Mr. Dixon's statements would be for their falsity.

Beyond these basic principles, however, the Court is unable to address the matter further. Mr. Scott's stated intention to present unspecified evidence of the Aurora Police's knowledge of Mr. Dixon's gang connections or the subsequent conviction of Mr. Dixon for a gun-involved

crime primarily present admissibility questions arising under Fed. R. Evid. 401 and 403. As is the Court's practice, objections on these grounds are resolved at the time of trial, when the precise content of the evidence being proffered can be evaluated within the context of the trial record. Accordingly, the Court denies Mr. Scott's motions *in limine*, with leave to Mr. Scott make a proffer of the evidence at the appropriate time during trial, outside the presence of the jury.

The Court then turns to the CBI's motion.[3] Mr. Scott served a subpoena *duces tecum* on the CBI, requesting three categories of information: (i) all information in CBI's records pertaining to gang affiliation of Mr. Scott; (ii) all information contained in CBI's records about any person (other than Mr. Scott) using the nickname or alias "Little Menace" or "Lil Menace"; and (iii) all information in CBI's records pertaining to "any persons [matching] the physical descriptor of being heavyset black males with dreadlocks." The CBI argues that Mr. Scott's requests are an overbroad "fishing expedition," that they request "confidential information" that "could pose a danger to individuals referenced and identified therein" if produced to Mr. Scott, and which contain private information including individuals' dates of birth, phone numbers, addresses, etc.

The Court agrees with the CBI that Mr. Scott's subpoena should be quashed. Although Fed. R. Crim. P. 17(c) permits a defendant to issue subpoenas *duces tecum*, the purpose of the

---

[3] CBI filed the motion under a provisional Level 4 (*ex parte*) restriction, apparently because it submitted several documents for *in camera* review as an attachment to the motion. Neither CBI nor any other party subsequently filed a separate Motion to Restrict Access, as required by D.C. Colo. L. Crim. R. 47.1(e), in order to render those provisional restrictions permanent. Had CBI made such a motion, the Court would have denied it as to the motion itself, which reveals no confidential information and, indeed, as is shown on the Certificate of Service, was sent to Mr. Scott's counsel. Accordingly, the Court will direct the Clerk to lift the provisional restrictions on Docket # 68. The records submitted by the CBI for *in camera* review, Docket # 68-1, shall remain under restriction, as the Court determines that those records contain private information of non-parties and are not discoverable by Mr. Scott.

rule is not to serve as a discovery mechanism, and the subpoenaed records must be relevant, admissible, and specific. *U.S. v. Nixon*, 418 U.S. 683, 698-99 (1974). In other words, a Rule 17 subpoena may not be used as "a general fishing expedition." *Id.* A defendant must also show that the information sought cannot be procured otherwise. *Id*.

Mr. Scott cannot show that any of the three categories of information requested from the CBI meet these requirements. His request for information in the CBI's possession about himself seeks information that is not relevant for purposes of the charges herein. What is relevant here is the information that was before the police officers who investigated the vehicle accident – that is, the information that led police to conclude that Mr. Scott possessed the pistol. To the extent that the CBI has information about Mr. Scott that those police officers did <u>not</u> have or consider when deciding to bring charges against him, that information is irrelevant here. Moreover, much of the information that is included in the CBI records about Mr. Scott that have been tendered for *in camera* review is information that is also within Mr. Scott's own knowledge: his vital statistics and identifying information, the identities of his associates, and his past contacts with law enforcement are all matters that are already known to Mr. Scott.

The remaining two categories of information are overbroad and non-specific "fishing expeditions." Mr. Scott clearly wishes to present a theory of an alternative suspect who shares the alias "Little Menace" with Mr. Scott, but he is unable to identify that person with any degree of specificity and thus asks the CBI to divulge details of <u>all</u> such persons statewide. This is precisely the type of "fishing expedition" that *Nixon* forbids. And, the Court need not even elaborate on the patently-overbroad request for all CBI information relating to heavy-set black males with dreadlocks throughout the state. Accordingly, the Court grants the CBI's motion to quash.

For the foregoing reasons, Mr. Scott's Motion *In Limine* Concerning Police Investigation **(# 54,** as supplemented **# 60)** is **DENIED**. The CBI's Motion to Quash Subpoenas **(# 68)** is **GRANTED.** The Clerk of the Court shall restore public access to the main document at Docket # 68, although the attachment at Docket # 68-1 shall remain under the existing restriction.

Dated this 2nd day of November, 2015.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge